UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**YURGLEN TORRES VAZQUEZ,**

      **Petitioner,**

    **v.**                                     **Case No.:  6:26-cv-00727-AGM-DCI**

**LOUIS A. QUINONES JR.,
GARRETT RIPA, SECRETARY
MARKWAYNE MULLIN, ACTING
DIRECTOR-ICE, TODD LYONS, U.S
ATTORNEY GENERAL PAMELA
BONDI,  EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,**

      **Respondents.**

_____

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Petitioner Yurglen Torres Vazquez's Petition for Writ of Habeas Corpus (Doc. # 1; the "Petition"). For the reasons stated herein, the Petition is due to be dismissed.

### I.  BACKGROUND

Mr. Vazquez is a citizen of Mexico who challenges his ongoing detention at the Orange County Jail in Orlando, Florida. (Petition ¶ 23.) Mr. Vazquez states that he has resided in the United States since January 2008. (*Id.* ¶ 80.) On March 31, 2026, Mr. Vazquez was arrested during a traffic stop conducted by local law enforcement. (*Id.*) He was then transported to the Orange County Jail, where he has remained since. (*Id.* ¶ 82.) Mr. Vazquez alleges that he was not arrested for any crime, has not been given bond, and his criminal history consists of only traffic violations that would not otherwise subject him to mandatory detention. (*Id.* ¶

84.)  Since his detention, no removal proceedings have been initiated against Mr. Vazquez. (*Id.* ¶ 80.)

Mr. Vazquez asserts five claims for relief: Violation of the Fifth Amendment (Count I); Violation of the Administrative Procedure Act ("APA") (Count II); Violation of the APA (Arbitrary and Capricious Deprivation of Liberty) (Count III); Violation of the Fourth Amendment and *Ultra Vires* Detention (Count IV); and Violation of the APA (Count V).  The Petition demands that the Court (1) order that Mr. Vazquez not be transferred outside the Middle District of Florida; (2) issue an Order to Show Cause directing Respondents to show cause why this Petition should not be granted within three days; (3) issue a writ of habeas corpus directing Respondents to immediately release Mr. Vazquez or, in the alternative, order a bond hearing; (4) order Respondents to return Mr. Vazquez's property; (5) declare Mr. Vazquez's detention unlawful; (6) prohibit Immigration and Customs Enforcement ("ICE") from invoking "automatic stay provisions under 8 C.F.R. § 1003.19(i)(2)"; (7) enjoin Respondents permanently from re-detaining Mr. Vazquez; (8) retain jurisdiction to ensure compliance; (9) award attorney's fees and costs under the Equal Access to Justice Act; and (10) grant any other relief the Court deems just and proper.  (*Id.* at 50–51.)

The Petition is verified by counsel, as follows:

> In accordance with 28 U.S.C. § 2242, undersigned counsel hereby submits this verification on behalf of Petitioner, YURGLEN TORRES VAZQUEZ, because I am Petitioner's legal counsel.  I have discussed with Petitioner and/or his family, the events in the foregoing Petition.  Based on those discussions, as well as documents provided to me by Petitioner's family, pursuant to 28 U.S.C. 1746, I hereby verify under penalty of perjury, that I have reviewed the foregoing and the facts stated therein are true and accurate to the best of my knowledge and belief.

(*Id.* at 52.)

2

## II.    LEGAL STANDARD

### A. Writ of Habeas Corpus

The Latin term "habeas corpus" literally translates "you shall have the body"[1] and the issuance of the writ orders that the detainee be brought into court so that the legality of the detention may be assessed.  Congress provided district courts the power to issue writs of habeas corpus in 28 U.S.C. § 2241 and provided the legal requirements for issuance in 28 U.S.C. § 2242.  Pursuant to § 2242, a petition for the writ must be (1) "in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf"; (2) allege the "facts concerning the applicant's commitment or detention"; and (3) allege the "name of the person who has custody over him and by virtue of what claim or authority, if known."

### B. Subject Matter Jurisdiction Generally

"Federal courts are courts of limited jurisdiction and are required to inquire into their jurisdiction at the earliest possible point in the proceeding."  *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001).  The party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of federal jurisdiction.  *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).  Not only is it unnecessary for district courts to wait for lack of subject matter jurisdiction to be raised as a defense, it is "well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

---

[1] Blackstone defined the writ of habeas corpus as a writ "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his detention."  3 W. Blackstone, Commentaries on the Laws of England 131.

3

"[B]ecause the Constitution unambiguously confers [] jurisdictional power to the sound discretion of Congress, federal courts 'should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction.'" *Id.* at 409 (cleaned up). When a district court acts without subject matter jurisdiction, "it violates the fundamental constitutional precept of limited federal power," "unconstitutionally invades the powers reserved to the states to determine controversies in their own courts," and "offends fundamental principles of separation of powers." *Id.* at 409–10.

Doubt as to the existence of its jurisdiction may arise from a trial court's examination of the face of the pleading and the attached exhibits. *See McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). If the court determines that the face of the petition fails to allege a sufficient basis for subject matter jurisdiction, dismissal is appropriate. *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

A district court is required to consider its jurisdiction over a petitioner's habeas corpus claims before ruling on the merits, *see Sampson v. Warden, FCC Coleman-USP I*, 605 F. App'x 861, 863 (11th Cir. 2015), because the courts are limited to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a).

### C. Jurisdiction Over the Custodian

To determine whether it has jurisdiction in a habeas proceeding, the court must be able to identify who the petitioner alleges had physical custody over him at the time the petition was filed. *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973). The "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Id.* at 494–95. Thus, the proper respondent

to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Wales v. Whitney*, 114 U.S. 564, 574 (1885) ("[T]hese provisions contemplate a proceeding against some person who has the immediate custody of the party detained[.]").

In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court expressly disapproved of the idea that the immediate custodian rule is "flexible." *Id.* at 427 ("Padilla does not deny the immediate custodian rule's general applicability, but argues that the rule is flexible and should not apply on the unique facts of this case. The Court disagrees."). As a "default rule," the Supreme Court in *Padilla* explained that when a petitioner challenges his "present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. Under this rule, jurisdiction generally lies in only one district: the district of confinement. *Id.* at 442. The Court's jurisdiction is fixed as of the date the petition is filed and if the petition adequately names the immediate custodian, then subsequent moving of the petitioner does not defeat the court's habeas jurisdiction. *Id.* at 441 (discussing *Ex parte Endo,* 323 U.S. 283 (1944)). The district court "d[oes] not lose its jurisdiction when a habeas corpus petitioner [is] removed from the district so long as an appropriate respondent with custody remain[s]." *Jones v. Cunningham*, 371 U.S. 236, 243–44 (1963).

### D. Inapplicability of Jurisdiction Stripping

District courts have the power to issue writs of habeas corpus pursuant to 28 U.S.C. § 2241(a). However, Congress "may give, withhold or restrict such jurisdiction at its discretion,

provided it be not extended beyond the boundaries fixed by the Constitution," *University of South Alabama*, 168 F.3d at 409, and, to this end, Congress has statutorily provided that district courts have limited jurisdiction to issue writs of habeas corpus in certain immigration and alien removal contexts.  *See* 8 U.S.C. § 1252(a)(2)(A).

If, in the give-and-take of a complicated statutory scheme enacted by Congress, a trial court ultimately lacks jurisdiction, the court cannot allow the litigation to proceed under the guise of a claim that "dress[es] up a claim with legal or constitutional clothing to invoke [its] jurisdiction." *Camarena v. Director, Immigration & Customs Enforcement*, 988 F.3d 1268, 1274 (11th Cir. 2021) (quoting *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020)).  And while the Constitution states that the "privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public safety may require it," U.S. Const. art. I, § 9, cl. 2, "[t]he writ of habeas corpus known to the Framers was quite different from that which exists today." *Felker v. Turpin*, 518 U.S. 651, 663 (1996).  If a writ was not available as the writ was understood in 1789, the unavailability of it today does not violate the Suspension Clause. *Jones v. Hendrix*, 8 F.4th 683, 689–90 (8th Cir. 2021) ("Further, considering that the Suspension Clause refers to a specific legal instrument that existed at the time, we think there is good reason to adhere closely to the 1789 meaning.").

Additionally, claims that are "far outside the 'core' of habeas may not be pursued through habeas." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 125 (2020) (rejecting a habeas petition used to obtain authorization for an alien to remain in a country other than his own, noting that "we have no evidence that the writ as it was known in 1789 could be used to require that aliens be permitted to remain in a country other than their own, or as a means to

seek that permission"). Although a habeas court has the power to order the conditional release of an unlawfully-detained person, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

### E.  Habeas Rules

A petition for a writ of habeas corpus is governed by the Rules Governing Section 2254 Cases in the United States District Courts, Pub. L. 94426 (the "Habeas Rules").  While Rule 1(a) specifies that the Habeas Rules govern a petition filed under 28 U.S.C. § 2254, Rule 1(b) makes clear that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)."  The Habeas Rules are consistent with the statutory requirements imposed by 28 U.S.C. § 2242, including that "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf" and "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."

Like 28 U.S.C. § 2242, Rule 2(c) of the Habeas Rules requires that the petition "specify all the grounds for relief available to the petitioner;" "state the facts supporting each ground;" and "be signed under penalty of perjury by the petitioner or a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."  Habeas Rule 2(c)(1), (2), (5).

Habeas Rule 4 requires that the district court "must dismiss the petition and direct the clerk to notify the petitioner" if the district court determines that "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]"  And "[i]n every

case," Rule 4 requires that the clerk serve a copy of the petition and any order "on the respondent and on the attorney general or other appropriate officer of the state involved." *Id.*

"A prime purpose" of Rule 2(c)'s demand that petitioners plead with particularity is to "assist the district court" in its duties under Rule 4. *Mayle v. Felix*, 545 U.S. 644, 656 (2005). As between Rule 8 of the Federal Rules of Civil Procedure and Rule 2(c) of the Habeas Rules, "Habeas Corpus Rule 2(c) is more demanding." *Id.* at 656.

## III.    ANALYSIS

### A.  The Petition

#### 1.  Failure to Comply with Statutory Requirements

The Petition fails to meet the requirements of 28 U.S.C. § 2242, which plainly requires that it be both "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." To "verify" something means to "prove [it] to be true; to confirm or establish the truth or truthfulness of; to authenticate"; to "confirm or substantiate by oath or affidavit; to swear to the truth of." *Verify*, Black's Law Dictionary (12th ed. 2024). Here, counsel for Mr. Vazquez signed and attempted to verify the allegations of the Petition. Counsel "verified" the Petition by stating the allegations within are "true and accurate to the best of my knowledge and belief." (Petition at 52.)

As other jurisdictions have acknowledged, "[i]t is settled that a verification wherein affiant affirms merely that certain facts are, 'true to the best of his knowledge, information and belief,' means nothing 'more than the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth,' and, 'an affidavit of belief in their

8

truth simply amounts to nothing.'" *Board of Water & Sewer Com'rs of City of Mobile v. Spriggs*, 146 So. 2d 872, 873 (Ala. 1962).

In this instance, the form of the verification is clearly not appropriate given the character and objectives of this proceeding. Here, a foreign citizen allegedly in the United States illegally has filed a petition that (1) seeks to invoke the power of the United States judicial branch to haul into court (on three days' notice) the Attorney General of the United States, the Secretary of Homeland Security, the "Acting Director-ICE," and other agency officials from various sovereigns and (2) must be prioritized over other civil matters pending on the Court's docket. Within the context of the nature and character of the proceeding, it is especially important to know that the attorney who filed this case has spoken to the Petitioner or some other credible source in a position to know whether what is alleged in the Petition is actually true. Here, the wording of the verification indicates that this may not have occurred before this 52-page petition was filed.

According to the verification, counsel has discussed "the events described in the foregoing Petitioner" with "Petitioner and/or his family." That statement is meaningless, without more. For the purpose of the verification, it matters whether counsel spoke to (1) the Petitioner himself or (2) a third-cousin twice removed who hasn't seen the Petitioner since Easter of 1992. Meanwhile, the wording of the Verified Disclosure of Third-Party Litigation Funding (*see* Doc. # 5) raises the possibility that counsel was retained by someone other than Petitioner.[2] And while perhaps the Petitioner's mother has first-hand knowledge of the facts,

---

[2] The third-party funding disclosure reflects that the Petitioner's mother—who, according to counsel, has no affiliation with Mexico (unlike her son, who is a citizen of Mexico)—"assists with" funding this case. (Doc. # 5.) "Assisting with" payment of legal fees could mean that the third-party's funding supplements Petitioner's

it is not clear from the verification whether she is the person with whom counsel spoke. If she was, it is not clear whether counsel confirmed that she had first-hand knowledge of the facts alleged in the Petition. Plainly, this is not the type of verification on which it would be appropriate for a court to rely on in this type of case.

### 2. Failure to Comply with Pleading Standards

Whether examined under the Federal Rules of Civil Procedure or the Habeas Rules, the Petition fails to comply with the requisite pleading standards and is due to be dismissed.

### a. Federal Rules

The Federal Rules of Civil Procedure mandate that a pleading contain the following:

(1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)     a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). The allegations must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). In addition, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792

---

own funding of his case—which would tend to suggest that the Petitioner retained counsel and has consulted with him. Or, given the relatively vague wording of the disclosure, it could mean that the Petitioner's mother assists with some other undisclosed source of funding. The wording of the third-party funding disclosure, like the wording of the verification, is susceptible to more than one meaning.

F.3d 1313, 1320 (11th Cir. 2015). Recognizing that the use of the label "shotgun pleading" may be imprecise, the Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." *Id.* at 1321. "The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second type is one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. The third type fails to "separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. The fourth type "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "[T]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Although "it is much easier in the short term to permit shotgun pleadings . . . instead of intervening *sua sponte* to narrow the issues . . . district courts have the power and the duty to define the issues at the earliest stages of litigation" and it is appropriate to "quickly demand repleader" to avoid being "drowned in an uncharted sea," a "massive record," and "loose pleadings." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

Here, the Petition is a shotgun pleading for three reasons: (1) it lumps the Respondents together in a way that makes it impossible for the Court to determine who Mr. Vazquez alleges

11

did what and when; (2) each count adopts and incorporates the allegations of the preceding paragraphs and counts; and (3) it is replete with "conclusory, vague, and immaterial facts."

The Petition identifies six Respondents, and the allegations do not distinguish between them. Mr. Vazquez alleges broadly that he is in the "physical custody of Respondents at the Orange County Jail." (Petition ¶ 1.) He alleges that "Respondents' practice of rapidly transferring detainees out of state without an opportunity to consult with counsel is unconstitutionally excessive." (*Id.* ¶ 39.) Mr. Vazquez demands that this Court "enjoin and restrain Respondents from relocating, transferring, or removing" him from the Orange County Jail. (*Id.* ¶ 41.) Throughout the Petition, Mr. Vazquez attributes a swath of unlawful acts to the "Respondents" generally, without specifying which party is responsible for which acts. (*See, e.g.*, *id.* ¶¶ 95, 96, 101, 107, 108, 110, 113, 117, 120.) As a result, if the legal requirements for issuance had been met (here they were not), it is not clear why the writ should be issued to each of these named respondents.

Aside from grouping the Respondents together, the allegations themselves impermissibly incorporate all of the preceding facts, including those of the prior claims. Each of Mr. Vazquez's five claims begins with "Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein." (*Id.* ¶¶ 88, 99, 105, 111, 114.) The net effect is that each claim alleges facts that are not directed toward the proper Respondent, nor "pertinent to each claim." *See Barmapov v. Amuial*, 986 F.3d 1321, 1323 (11th Cir. 2021). The Court must parse through the factual body of the Petition while "sift[ing] out the irrelevancies" in order to ascertain the basis of each claim and to whom each claim is directed, "a task that can be quite onerous." *Strategic Income Fund, L.L.C.*

*v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). The pleading thus fails to provide Respondents proper notice of the "grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

Finally, the fact that the allegations of each count impermissibly incorporate all preceding paragraphs is particularly onerous because the Petition itself is fifty-two pages. Throughout those pages, the Petition editorializes at length about matters irrelevant to the legal issues here. It cites extensively the decisions of federal district courts, yet omits discussion of two contrary opinions from federal appellate courts.

While the pleading standard of Rule 8 does not require "detailed factual allegations," it demands more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given the constitutional issues and separation of powers concerns implicated by the Petition, the Court is "unwilling to address and decide serious constitutional issues" on the basis of a complaint that fails to meet technical pleading requirements. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

### b.  Habeas Rules

Examined under the Habeas Rules, the Petition notably fails to meet the requirements of Rule 2(c) for the same reasons. It does not "specify all grounds for relief available to the petitioner" or "state the facts supporting each ground." Additionally, Rule 4 imposes a screening function upon the Court that states "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . the judge must dismiss the petition[.]"

13

### i.    Entitlement to Relief

The Petition here demands that this Court take the extraordinary step of directing the work of a different branch of government; it does so with bare and unsupported assertions, while leaving out obviously important details. For example, the Petition notably omits details surrounding Mr. Vazquez's entry into the United States and his legal status at the time of his detention. While the Petition states that Mr. Vazquez is a native of Mexico and has not been placed in removal proceedings, it does not make any assertions regarding Mr. Vazquez's admission or legal status in the United States. There is no mention of whether Mr. Vazquez was admitted at a lawful port of entry, nor does it assert that he has been lawfully present in the United States since his arrival.

These are not trivial omissions. The Petition alludes to the possibility of removal proceedings in the future. (*See* Petition ¶¶ 79, 84, 97, 118.) But even in the absence of pending removal proceedings, the facts regarding Mr. Vazquez's admission into the United States and his legal right to remain are relevant to the Court's analysis of the legality of his detention. *See, e.g.*, 8 U.S.C. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission."); *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (stating that persons who entered the United States without admission are subject to detention under 8 U.S.C. § 1225 and therefore ineligible to be released on bond). The Petition suggests that the Court should insert itself into the complex framework of immigration law, under which an alien can

14

be detained for a host of reasons, without explaining whether Mr. Vazquez was lawfully admitted or present in the United States. Ultimately, "conclusory allegations, unwarranted deductions of facts or legal conclusions" asserting the unlawfulness of Mr. Vazquez's detention, without more, are insufficient to show Mr. Vazquez is entitled to relief. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). And given that "Habeas Corpus Rule 2(c) is more demanding" than Rule 8 of the Federal Rules of Civil Procedure, *Mayle*, 545 U.S. at 655, the Petition is subject to dismissal on these grounds.

Even if the Petition sufficiently met all the technical pleading requirements, it fails to establish that Mr. Vazquez is entitled to habeas relief. For example, Mr. Vazquez asserts in Count I that his ongoing detention violates his due process rights under the Fifth Amendment, and under the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

In *Mathews*, the Supreme Court observed that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" but rather "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334. Resolving whether a process is constitutionally sufficient "requires analysis of the governmental and private interests that are affected." *Id.* To that end, consideration of "[t]hree distinct factors" is necessary: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

15

Here, on the first factor, it seems clear that Mr. Vazquez has some interest that will be affected by that official action. However, the allegations of his Petition are too vague to discern the nature of that interest. It may be that the nature of his interest is that of a person who is not lawfully present in the United States. If Mr. Vazquez's interest is that of a person who is not lawfully present in the United States, a due process analysis under *Mathews* would require him to articulate how it is "erroneous" for the United States to deprive him of his ability to remain in the United States illegally. On the third factor, Mr. Vazquez must necessarily address the United States' interest in exercising control over illegal immigration, and the separation of powers considerations inherent in a request that a district court impose substantial, additional or substitute procedural requirements relating to immigration enforcement.

### ii.    Type of Relief Requested

Mr. Vazquez argues that the Court "should enjoin and restrain Respondents from relocating, transferring, or removing Petitioner from the Middle District while these habeas proceedings are pending" but he has no controlling authority that suggests that the Court has that power. Indeed, there are good reasons to question whether such relief is within this Court's authority to grant. Courts have interpreted immigration statutes to mean that district courts *do not* have jurisdiction to enjoin the transfer of detainees from one location to another in other contexts. *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (recognizing the Attorney General's authority to determine the location of detention and, "therefore, to transfer aliens from one detention center to another"); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (recognizing that the Attorney General has "discretionary power

16

to transfer aliens from one locale to another, as she deems appropriate"); *see also* 8 U.S.C. § 1231.

The Petition asserts that interference with the attorney-client relationship is sufficient grounds to "enjoin and restrain" Respondents from transferring him.  However, on this point Mr. Vazquez relies on a distinguishable out-of-circuit case decided almost four decades ago, which conflicts with controlling and more recent precedent from the United States Supreme Court.  Even more, nowhere in the 52-page Petition does Mr. Vazquez allege with specificity that there has been an actual disruption of the attorney-client relationship.

Mr. Vazquez has further not provided any controlling authority that demonstrates he would be entitled to release if the Petition were granted.  The Supreme Court has made clear that release is *not* the "exclusive remedy," nor is it "the appropriate one in every case in which the writ is granted." *Boumediene*, 553 U.S. at 779.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Vazquez's Petition must be dismissed without prejudice. If the Petition is amended, it should be amended within the same case number.  Furthermore, if the Petition is amended, Mr. Vazquez is directed to address significant contrary authority from the Fifth and Eighth Circuits in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026).

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1.      The Petition for Writ of Habeas Corpus (Doc. # 1) is **DISMISSED without prejudice**.  The Petition may be amended to correct the deficiencies identified

here.  If re-filed or amended, counsel should utilize the same case number and caption; and

2.      Pursuant to Rule 4 of the Habeas Rules, the Clerk is directed to **SERVE** a copy of the Petition and this Order on the Respondents and the Attorney General of the State of Florida.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this April 10, 2026.

ANNE-LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Petitioner
Respondents
Attorney General of Florida

18