**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**YURGLEN TORRES VAZQUEZ,**

      **Petitioner,**

  **v.**　　　　　　　　　　　　　　**Case No.:  6:26-cv-00727-AGM-DCI**

**LOUIS A. QUINONES, JR.;**
**GARRETT RIPA; MARKWAYNE**
**MULLIN; TODD LYONS; TODD**
**BLANCHE; EXECUTIVE OFFICE**
**FOR IMMIGRATION REVIEW,**

      **Respondents.**

---

## ORDER

THIS CAUSE comes before the Court upon Petitioner Yurglen Torres Vazquez's Amended Petition for Writ of Habeas Corpus (Doc. # 8; the "Amended Petition").  The Court previously dismissed Mr. Vazquez's Petition (Doc. # 1; the "Petition") with leave to file an amended petition correcting the deficiencies identified in the Order (Doc. # 7; the "Dismissal Order").  In his Amended Petition, Mr. Vazquez once again alleges that the United States has unlawfully detained him for immigration purposes.  After review, the Amended Petition is due to be dismissed for the following reasons.

### I.　　LEGAL STANDARD

There is no question that United States District Courts have the power to issue writs of habeas corpus; Congress granted lower federal courts habeas jurisdiction in 28 U.S.C. § 2241.  In 28 U.S.C. § 2242, Congress required that prior to the exercise of habeas jurisdiction there must be a petition that (1) is "in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf"; (2) alleges the "facts concerning the

applicant's commitment or detention"; and (3) alleges the "name of the person who has custody over him and by virtue of what claim or authority, if known."  The writ or an order to show cause should be issued "forthwith" unless, on review of the petition, the court finds that the petitioner is not "not entitled thereto."  28 U.S.C. § 2243.

## II.   ANALYSIS

For the reasons that follow, Mr. Vazquez is not entitled to the issuance of the writ because the Amended Petition fails to comply with the statutory requisites of 28 U.S.C. § 2242.

### A.  The Amended Petition is Signed but Not Verified in Accordance with the Ordinary Meaning of "Verification"

Section 2242 requires that the petition be both signed and verified.  Mr. Vazquez's petition complies with the signature requirement because his counsel signed the petition.  However, the petition is not verified in accordance with the ordinary meaning of "verification."  The "Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. § 2242" is signed not by Mr. Vazquez or anyone who claims to have personal knowledge of the facts.  Instead, the "verification" is signed by Mr. Vazquez's counsel, who states:

> I, Joel Alexis Caminero, Esq., counsel for the Petitioner, YURGLEN TORRES VAZQUEZ, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows . . . [and] attest that the factual allegations contained in this Amended Petition are true and correct to the best of my personal knowledge and based on information provided by Petitioner with firsthand knowledge of the events described.

(Amended Petition at 66–67.)  Like other texts, the text of 28 U.S.C. § 2242 must be considered "in its legal context."  *Pulsifer v. United States*, 601 U.S. 124, 141 (2024).  It "creates an eligibility checklist" of the kind the Supreme Court considered in *Pulsifer*.  *Id.*  And there, the Court

counseled against reading a list of requirements by Congress in a way that would render one textual requirement "meaningless" when it could be read "to serve a concrete function." *Id.* at 143. Where section 2242 requires that the petition be "signed *and* verified," independent meaning must be given to both requirements.

In the context of legal filings, the requirement of a signature is tantamount to a representation of the signatory's good faith. This meaning of "signed" comports with Rule 11 of the Federal Rules of Civil Procedure. Under Rule 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." When a court is presented with a pleading, motion, or other paper that is signed, the signature represents a certification "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" certain things are true. First, "to the best of the person's knowledge" the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Rule 11(b)(1), Fed. R. Civ. P. Second, "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11(b)(2), Fed. R. Civ. P. Third, "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11(b)(3), Fed. R. Civ. P. Fourth, "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Under Rule 11(c), the Court may enter sanctions against a signatory if, "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." Rule 11 provides what sanctions may be entered against a signatory who violates Rule 11(b), and those sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11 sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." But, importantly, Rule 11 makes no mention of perjury as a consequence for signing a filing in violation of Rule 11.

In the context of a legal proceeding, verification means something more than simply a good faith belief that the alleged facts are true. A verification states that the facts *are* true, under penalty of perjury. Indeed, the meaning of the word "verify" is to affirmatively and definitively attest to the truth and authority of what is alleged, under penalty of perjury. *Verify*, American Heritage College Dictionary (3d ed. 1993) (defining "verify" as "to append a verification" to a pleading or "conclude with a verification"); *Verify*, Black's Law Dictionary (12th ed. 2024) (defining "verify" as "to prove [it] to be true; to confirm or establish the truth or truthfulness of; to authenticate"; to "confirm or substantiate by oath or affidavit; to swear to the truth of."); *Verification*, American Heritage College Dictionary (defining "verification" as "an affidavit that attests to the truth of a pleading."). This is why other jurisdictions have acknowledged that "[i]t is settled that a verification wherein affiant affirms merely that certain facts are, 'true to the best of his knowledge, information and belief,' means nothing 'more than

the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth,' and, 'an affidavit of belief in their truth simply amounts to nothing.'" *Board of Water & Sewer Com'rs of City of Mobile v. Spriggs*, 146 So. 2d 872, 873 (Ala. 1962).

Considering the meaning of "under penalty of perjury," it is obvious why a "verification" that contains the caveat that the allegations are true only *to the best of counsel's personal knowledge* is not a verification within the meaning of 28 U.S.C. § 2242. "Perjury is 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Duperval*, 777 F.3d 1324, 1337 (11th Cir. 2015). Considering this definition, if it were acceptable to verify a habeas petition simply as far as counsel knows, then verification is nothing more than another layer of Rule 11 certification of good faith belief. And if counsel were permitted to throw together a habeas petition that "states a claim for habeas, whether it's true TBD," then kitchen sink "just-doin'-the-best-I-can-judge" allegations that turn out to be false, that would not be perjury under *Duperval*. In that case, the penalty of perjury is no threat at all and the purpose of requiring a verification would be defeated. If perjury became toothless, one might expect the floodgates to open. Attorneys might file cases on behalf of clients with whom they have never spoken. They might file on behalf of clients who do not even know they have retained them. They might file petitions not having any idea whether the allegations are true.

On this latter point, it is appropriate to consider the legal context and nature of a habeas proceeding when construing the meaning of "verified" under section 2242. *Pulsifer*, 601 U.S. at 730. Under 28 U.S.C. § 2243, when a petition for a writ of habeas corpus is filed, "unless it

5

appears from the application that the applicant or person detained is not entitled thereto," the court is expected to act "forthwith" and either award the writ or issue an order to show cause. In a very real sense, this means that the mere filing of a petition for habeas corpus grinds to halt other work that would otherwise occur in chambers, because the judicial officer must attend to the petition "forthwith." 28 U.S.C. § 2243. Naturally, if simply filing a petition will have that effect, it is logical to require that the petitioner be subject to penalty of perjury.

The separation of powers in the United States Constitution further contextualizes the requirement that the allegations be made under the penalty of perjury. If on review of the petition the court concludes that the writ or an order to show cause must be issued, then in section 2243, Congress required both the judicial and executive branches to prioritize the case and respond quickly. The statute requires that "[i]t shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* The person to whom the writ is directed "shall" then "make a return certifying the true cause of the detention" and, after the return is filed, "a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed." *Id.* And then, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.* Considered in this context, it is obvious that the statutory requirement of verification is not met when the "verification" does not in any real sense expose the verifier to a penalty of perjury.

To be clear, the issue here is not necessarily that Mr. Vazquez did not himself execute the verification. The statute does allow verification "by someone acting in his behalf." 28 U.S.C. § 2242. However, whoever verifies the petition must be in a position to state that the

allegations are true, under penalty of perjury.  Giving the word "verified" its ordinary meaning independent of the word "signed," an attorney who lacks personal knowledge of the facts and "verifies" the petition based on a good faith belief that time will prove those allegations to be true is not verifying the petition within the meaning of the statute.  To permit this would be to make verification and signature under Rule 11 materially indistinguishable. Courts have a duty to "give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538-39 (1955).  In construing section 2242, the Court is "reluctant to treat statutory terms as surplusage" because "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal citation and quotation marks omitted).

Here, the Amended Petition acknowledges that the form of verification is "unconventional," but nevertheless asserts that it complies with the "spirit" of section 2242. (Amended Petition at 3.)  The Amended Petition goes on to urge the Court to construe the rules in such a way as to resolve the case on its merits, "rather than technicalities." (*Id.*)  While the verification included in the Amended Petition is in many ways an improvement on the barebones verification included in the original (*see* Petition at 51–52), it remains insufficient under the requirements of section 2242.  Despite counsel's best efforts to verify the petition by speaking with Mr. Vazquez, the fact remains that counsel does not have personal knowledge of the substantive allegations.  The operative question is this: would counsel, who verified the petition, be subject to perjury should the facts alleged prove to be false?  As

7

counsel asserts in his own verification, the allegations are based on hearsay[1] from Mr. Vazquez and others.  Should the allegations prove false, it would undoubtedly be difficult to sustain a perjury charge against counsel who can assert that he merely relied on what his client told him. Thus, there is a clear distinction between a Rule 11 signature and the heightened verification requirement for a habeas petition, which counsel has not met here.

Habeas actions are civil actions with heightened pleading standards. *See Mayle v. Felix*, 545 U.S. 644, 649 (2005) (acknowledging the heightened pleading requirements of Habeas Rule 2(c)). While habeas cases implicate fundamental liberty interests, "neither the Fifth or Sixth Amendment rights to counsel apply to habeas petitioners." *McGriff v. Dep't of Corr.*, 338 F.3d 1231, 1234 (11th Cir. 2003).  Consequently, it is common for habeas petitions to be filed by pro se petitioners, the majority of whom are in custody.

While section 2242 has long been interpreted as allowing a "next friend" of a detainee to bring an action on the prisoner's behalf, usually when this occurs it is due to mental incapacity and the like. *Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990).  The "next friend" is typically a person with a "significant relationship" to the party who may "pursue[] the cause on behalf of the detained person[.]" *Id.* at 163–64.  But as the United States Supreme Court has acknowledged, "'next friend' standing is by no means granted *automatically* to whomever seeks to pursue an action on behalf of another" and two prerequisites must generally be met by the non-party petitioner bringing the action. *Id.* at 163 (emphasis added).  First, "a 'next

---

[1] Hearsay is generally defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  The allegations of the Amended Petition, asserted for their truth by counsel based on conversations with non-declarants, are classic examples of hearsay.

friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." *Id.* Second, "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Id.* The limitations imposed by this inquiry, along with the burden imposed on the "next friend" to clearly establish their standing before the court, "are driven by the recognition that it was not intended that the writ of habeas corpus should be availed of, as matter of course, by intruders or uninvited meddlers[.]" *Id.* at 164 (cleaned up). Without these limitations, "litigant[s] asserting only a generalized interest in constitutional governance could circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" *Id.*

Verification is a statutory requirement, not a mere "technicality" the Court can ignore. To the contrary, the necessity of a verification, made based on personal knowledge and signed under penalty of perjury, illustrates the heightened and careful approach both the court and the petitioner must take in proceeding on a habeas case. There is nothing so "exceptional," "special," or "unusual" about the present case that requires departure from the statutory guidelines this Court is bound to follow. *Rumsfeld v. Padilla*, 542 U.S. 426, 450 (2004). Instead, it is "just as necessary in important cases as in unimportant ones that courts take care not to exceed their 'respective jurisdictions' established by Congress." *Id.*

Given the distinct character and objectives of this proceeding, the verification included in the Amended Petition is clearly not appropriate under the circumstances. Accordingly, the Amended Petition is due to be dismissed. *See In re Gibson*, 218 F.2d 320, 320 (9th Cir. 1954)

9

("[The petitioner's] application was not verified as is required by 28 U.S.C. § 2242, and the District Court was justified in refusing to file it.").

### B. The Petition Fails to Allege Necessary Facts Concerning Detention

A habeas petition must allege "the facts concerning the applicant's commitment or detention." 28 U.S.C. § 2242. The Amended Petition does not comply with this requirement, because it omits key facts about Mr. Vazquez's detention. For example, the Amended Petition notably omits specifics surrounding Mr. Vazquez's entry into the United States and his legal status at the time of his detention. The Amended Petition states that Mr. Vazquez is a native and citizen of Mexico, however, it asserts that he entered the United States "at or around" a lawful port of entry. Notably missing is whether Mr. Vazquez was lawfully admitted at that port of entry. The Amended Petition further fails to mention whether he has been lawfully present in the United States since his arrival or at the time of detention.

These are not trivial errors or omissions. Clearly, whether Mr. Vazquez (1) entered the United States lawfully after inspection and authorization of an immigration officer; and (2) has been authorized to remain in the United States through the date of his detention, are facts relevant to the Court's analysis of the legality of his detention. *See, e.g.*, 8 U.S.C. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."); 8 U.S.C. § 1226(a) ("On

a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

Meanwhile, key allegations of the Amended Petition are a nullity because the petition is not verified within the meaning of the statute and important facts are explicitly not alleged based on personal knowledge. For example, the petition alleges that "[u]pon information and belief, ICE has charged Petitioner with, inter alia, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)." (Amended Petition ¶ 81.) Elsewhere, the petition alleges that "upon information and belief provided by Petitioner's family, it is believed that he is currently at Federal Detention Center, Miami, Florida." (*Id.* at 7.)

Under the complex statutory framework of American immigration laws, the facts of Mr. Vazquez's criminal record are consequential. The wiggle room created by the verification-that-isn't and the assertions of fact that are only "on information and belief" or "to the best of my knowledge" simply add an additional reason to conclude that Mr. Vazquez is not entitled to issuance of the writ.

### C. The Amended Petition Does Not Name the Person Who Has Custody of the Petitioner

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is '*the person* who has custody over the petitioner.'" *Padilla*, 542 U.S. at 434 (emphasis added); *see also Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973); 28 U.S.C. § 2242 (requiring that a habeas petition allege "the name of *the person* who has custody over him"). This Amended Petition names multiple respondents, some of whom are persons, but the shotgun nature of the petition obscures who Mr. Vazquez is alleging to be his immediate custodian as a matter of law. Ultimately, if the Court cannot determine who the

11

petitioner alleges to be his immediate custodian, it cannot issue the writ or an order to show cause.  28 U.S.C. § 2243 ("A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto.*") (emphasis added).

The petitioner must allege the name of the person who is his immediate custodian because the "writ of habeas corpus does not act upon the prisoner who seeks relief, but *upon the person who holds him* in what is alleged to be unlawful custody." *Braden*, 410 U.S. at 494–95 (emphasis added).  Thus, the proper respondent to a habeas petition is "*the person* who has custody over [the petitioner]." 28 U.S.C. § 2242 (emphasis added); *see also* § 2243 ("The writ, or order to show cause shall be directed to *the person* having custody of the person detained.") (emphasis added); *Wales v. Whitney*, 114 U.S. 564, 574 (1885) ("[T]hese provisions contemplate a proceeding against *some person* who has the immediate custody of the party detained[.]") (emphasis added).

In *Rumsfeld v. Padilla*, the Supreme Court expressly disapproved of the idea that the immediate custodian rule is "flexible."  *See id.* at 427 ("Padilla does not deny the immediate custodian rule's general applicability, but argues that the rule is flexible and should not apply on the unique facts of this case. The Court disagrees.").  As a "default rule," the Supreme Court in *Padilla* explained that when a petitioner challenges his "present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435.

Here, what it means to name the custodian must be considered in the statute's context. This is a legal proceeding governed by the Federal Rules of Civil Procedure, which mandate that a pleading contain the following:

(1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).  The allegations must be simple, concise, and direct.  Fed. R. Civ. P. 8(d)(1).  In addition, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Recognizing that the use of the label "shotgun pleading" may be imprecise, the Eleventh Circuit has "identified four rough types or categories of shotgun pleadings."  *Id.* at 1321.  "The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Id.*  The second type is one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Id.* at 1321–22. The third type fails to "separat[e] into a different count each cause of action or claim for relief."  *Id.* at 1322–23.  The fourth type "assert[s] multiple claims against multiple defendants

13

without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "[T]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Although "it is much easier in the short term to permit shotgun pleadings . . . instead of intervening *sua sponte* to narrow the issues . . . district courts have the power and the duty to define the issues at the earliest stages of litigation" and it is appropriate to "quickly demand repleader" to avoid being "drowned in an uncharted sea," a "massive record," and "loose pleadings." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

The failure to comply with this portion of section 2242 arises from the fact that the Amended Petition fails to comply with Rule 8 and is a shotgun pleading under *Weiland.* The Amended Petition groups the Respondents together in a way that makes it impossible for the Court to determine who Mr. Vazquez alleges did what and when, and to whom the writ should be directed. The Amended Petition identifies six Respondents and fails to meaningfully distinguish between them. Mr. Vazquez alleges broadly that he is in "the physical custody of Respondents." (Amended Petition ¶ 1.) He demands that the Court order "Respondents to show cause 'forthwith[.]'" (*Id.* ¶ 8.) He refers to the "Respondents' practice of rapidly transferring detainees out of state without an opportunity to consult with counsel" as constitutionally impermissible. (*Id.* ¶ 34.) Mr. Vazquez ultimately requests that the Court "enjoin and restrain Respondents from relocating, transferring, or removing Petitioner from

14

the Middle District while these habeas proceedings are pending." (*Id.* ¶ 36.) As in the original Petition, Mr. Vazquez continually attributes unlawful acts to the Respondents collectively and demands the Court order relief in the same vein. (*See, e.g., id.* ¶¶ 56, 81, 84, 89, 102, 105, 117.)

This is not the first time Mr. Vazquez has committed these errors; the original Petition was dismissed for, among other reasons, "lump[ing] the Respondents together in a way that makes it impossible for the Court to determine who Mr. Vazquez alleges did what and when[.]" (*See* Dismissal Order at 11–12.) The Amended Petition addresses this portion of the Dismissal Order, stating that because Mr. Vazquez cannot name his immediate custodian (given his uncertain location), the naming of a more remote custodian should satisfy any statutory requirements. (Amended Petition at 4.) In support of this argument, Mr. Vazquez relies on *Padilla* and other authority discussing habeas jurisdiction over the proper respondent.

It is unclear, however, how Mr. Vazquez's argument relates to the original Petition's failure to meet the technical pleading requirements of the Federal Rules of Civil Procedure. While this argument may be relevant toward identifying the proper respondent for statutory and jurisdictional purposes, the Amended Petition ultimately fails to address the Court's concerns over shotgun pleading, and indeed, goes on to make the same mistakes as before.

The issue is that Mr. Vazquez's grouping of Respondents undermines the Court's ability to justly adjudicate this matter because it cannot determine to whom the writ should properly be issued, who should be enjoined, and why. The writ must ultimately "be directed to the person having custody of the person detained," 28 U.S.C. § 2243, and it is unclear from the allegations who the proper Respondent is. As a result of naming six Respondents and referring to them collectively throughout the Amended Petition, the allegations fail to show

15

why the writ should be issued to each of these named Respondents individually.  And most importantly, the allegations still "fail to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland*, 792 F.3d at 1323.

It bears emphasis that the Court's jurisdiction is statutorily bound to the identity of the respondent, and Mr. Vazquez's argument that he should be permitted to name some remote official is unpersuasive.  28 U.S.C. § 2241 ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions.  The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.*") (emphasis added); *Padilla*, 542 U.S. at 435 (explaining that when a petitioner challenges his "present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.").  For that reason alone, a kitchen sink approach to naming respondents in a habeas petition is legally intolerable.

By statute, Congress provided that a habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.  Rule 15 of the Federal Rules of Civil Procedure, which governs amended pleadings, instructs: "An amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c)(2).  Given that the Court's jurisdiction is fixed as of the date the original petition is filed, and is not defeated upon the petitioner's transfer, *see Padilla,* 542 U.S. at 441 (discussing *Ex parte Endo,* 323 U.S. 283 (1944)), Mr. Vazquez must identify his immediate custodian with that context in mind if this petition

16

is re-filed.  Should any person other than the alleged immediate custodian is named as a respondent, Mr. Vazquez should cite the legal authority on which he relies for his conclusion that this Court has jurisdiction to issue the writ to a person or entity that is not the "immediate custodian" as that term was construed in *Rumsfeld v. Padilla*.

### D. Administrative Procedure Act

Mr. Vazquez further brings claims under the APA, arguing that Respondents' actions were adverse agency actions and requests that the Court grant his immediate release. (Amended Petition at 61–65.)  These claims fail for several reasons.

First, a habeas petition is the wrong vehicle in which to bring an APA claim.  Compared to the streamlined, fast-tracked rules governing habeas petitions, an APA claim is "a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint." *Mora v. Noem*, No. 2:26-CV-493-KCD-DNF, 2026 WL 1067044, at *3 (M.D. Fla. Apr. 20, 2026).  These claims are inappropriately attached to Mr. Vazquez's request for habeas relief challenging his physical confinement.

Second, the APA claims are defeated by virtue of Mr. Vazquez seeking habeas relief. The APA provides a right of judicial review only when "there is no other adequate remedy in a court."  5 U.S.C. § 704.  Considering Mr. Vazquez is concurrently seeking habeas relief—another adequate and available remedy—the APA claims are redundant and will not be considered.

### E.  Additional Issues

There are additional reasons why Mr. Vazquez is not entitled to issuance of the writ. In addition to the requirements of section 2242, a petition for a writ of habeas corpus is governed by the Rules Governing Section 2254 Cases in the United States District Courts, Pub. L. 94426 (the "Habeas Rules").  While Rule 1(a) specifies that the Habeas Rules govern a petition filed under 28 U.S.C. § 2254, Rule 1(b) makes clear that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)."  The Habeas Rules are consistent with the statutory requirements imposed by 28 U.S.C. § 2242, including that "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf" and "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."

Like 28 U.S.C. § 2242, Rule 2(c) of the Habeas Rules requires that the petition "specify all the grounds for relief available to the petitioner"; "state the facts supporting each ground"; and "be signed under penalty of perjury by the petitioner or a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."  Habeas Rules 2(c)(1), (2), (5).  "A prime purpose" of Rule 2(c)'s demand that petitioners plead with particularity is to "assist the district court" in its duties under Rule 4.  *Mayle v. Felix*, 545 U.S. at 656.  Since "Habeas Corpus Rule 2(c) is more demanding" than Rule 8, *id.* at 655, the Amended Petition is subject to dismissal, as it does not adequately "specify all grounds for relief available to the petitioner" or "state the facts supporting each ground."

18

### III.    CONCLUSION

This Court is committed to faithful application of binding precedent.  Under binding precedent, serious constitutional questions should not be addressed on deficient pleadings. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("We are unwilling to address and decide serious constitutional issues on the basis of this complaint.").  This Amended Petition fails to comply with the statutory requirements for issuance of the writ and it also fails to comply with Rule 8 of the Federal Rules of Civil Procedure and the Habeas Rules.  It is appropriate here to demand repleader, which will afford Mr. Vazquez an opportunity to cure the deficiencies of his petition.

Habeas Rule 4 requires that the district court "must dismiss the petition and direct the clerk to notify the petitioner" if the district court determines that "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]"  And "[i]n every case," Rule 4 requires that the clerk serve a copy of the petition and any order "on the respondent and on the attorney general or other appropriate officer of the state involved."  *Id.*

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1.    The First Amended Petition for Writ of Habeas Corpus (Doc. # 8) is **DISMISSED without prejudice**;

2.    Mr. Vazquez is granted ten days to amend his petition; and

3.    Pursuant to Rule 4 of the Habeas Rules, the Clerk is directed to **SERVE** a copy of the Amended Petition and this Order on the Respondents and the Attorney

19

General of the State of Florida.  The Clerk is further directed to serve the

Attorney General by first-class mail.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this May 26, 2026.

ANNE-LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Petitioner
Respondents
Attorney General of Florida

20